Durand P. NORWOOD, Appellant,

v.

LITWIN ENGINEERS & CONSTRUCTORS, INC., Appellee.

No. 01–96–01401–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1998.

Peter Costea, Houston, for Appellant.

G. Mark Jodon, Houston, for Appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

Durand P. Norwood appeals a take-nothing summary judgment granted for Litwin Engineers & Constructors, Inc. Norwood alleged that Litwin fired him because he was disabled by diabetes, in violation of the Texas Commission on Human Rights Act[1] (TCHRA). We reverse and remand.

## BACKGROUND

Norwood has been an insulin-dependent diabetic since 1966. Litwin employed Norwood as a senior electrical designer from September 1991 to August 1993. On July 27, 1993, Norwood fainted at work due to an insulin reaction. Litwin's on-site paramedics helped Norwood at the scene. After eating, he returned to work.

On August 11, 1993, Litwin terminated Norwood's employment pursuant to an alleged workforce reduction. On January 21, 1994, Norwood alleged discrimination with the EEOC, and he subsequently sued Litwin, alleging discrimination due to his "disability" (his diabetes) in violation of section 21.051 of the TCHRA.

■ Litwin moved for summary judgment asserting (1) the trial court had no jurisdiction because Norwood's complaint to the EEOC was not notarized; (2) the after-acquired evidence doctrine totally barred Norwood's claims; (3) Norwood was not disabled; and (4) even if Norwood was disabled, (a) Litwin did not know he was disabled, and (b) he was terminated for legitimate, non-discriminatory reasons. The trial court granted the motion on all grounds. Therefore, Norwood must show that every one of the above grounds has no merit. *Richardson v. Johnson & Higgins, Inc.*, 905 S.W.2d 9, 11 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

1. TEX. LAB.CODE ANN. § 21.001 (Vernon 1996).

## JURISDICTION

■ Norwood filed with the EEOC and used its form. The form's heading read, "Texas Commission on Human Rights and EEOC." The two agencies have a worksharing agreement under which the EEOC, as agent for TCHR, receives charges and forwards them to TCHR, as occurred here. *See Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir.1994); *see also Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773–74 (Tex.App.—Houston [14th Dist.] 1996, no writ). Litwin contends the trial court had no jurisdiction because Texas law requires that an oath be notarized and Norwood's oath was not.

On the EEOC form, Norwood signed the statement, "I declare under penalty of perjury that the foregoing is true and correct." That is an oath under federal law. 28 U.S.C.A. § 1746 (West 1994). Even though not notarized, it subjected Norwood to federal prosecution for perjury. 18 U.S.C.A. 1621 (West 1984). The form also contained a notary's jurat, stating: "NOTARY—(when necessary for state and local requirements.)," followed by a block for signature by the complainant and by a notary. Norwood did not complete this jurat.

The parties dispute which version of the Labor Code applied when Norwood filed. Norwood contends the following language controls: "A person ... aggrieved ... may file ... a complaint, which must be in writing under oath or affirmation." Act of Sept. 1, 1993, 73d Leg., R.S., ch. 276, § 6, 1993 Tex. Gen. Laws 987, 1289. Litwin asserts the following language controls: "The complaint must be in writing and made under oath." Act of Sept. 1, 1993, 73d Leg., R.S., ch. 269, § 1, sec. 21.201(b), 1993 Tex. Gen. Laws 987, 1000. We hold that it does not matter which statute controls because neither requires that the signature be notarized.

The reason for requiring a complaint "under oath" is to discourage false claims by subjecting the claimant to punishment for perjury. That goal was achieved here because Norwood's declaration constituted an

oath that would support a perjury prosecution in federal court. 18 U.S.C.A. § 1621 (West 1984); 28 U.S.C.A. § 1746 (West 1994). The Labor Code requires a complaint under oath, but not that the complainant be subject to prosecution for perjury in Texas courts.

Norwood's claim arises under the Texas Commission on Human Rights Act, which was enacted to carry out title I of the Americans with Disabilities Act of 1990 (the ADA). TEX. LAB.CODE ANN. § 21.001(3) (Vernon 1996). To do that, the EEOC and the TCHR may, as they did here, enter into "worksharing agreements." 42 U.S.C.A. §§ 2000e–4(g)(1), 2000e–8(b) (West 1994); *see also* TEX. LAB.CODE ANN. § 21.001 (Vernon 1996). These agreements provide efficient processing by allowing charges to be filed with either agency.

To hold that an oath sufficient under federal law is not sufficient to institute this claim under state law would be contrary to an important purpose of the Texas Commission on Human Rights Act, which is the "correlation of state law with federal law in the area of discrimination in employment." *Schroeder v. Texas Iron Works, Inc.* 813 S.W.2d 483, 485 (Tex.1991) (correlating TCHRA with the ADA). It would impede execution of policies embodied in the ADA. *See* TEX. LAB. CODE ANN. § 21.001(3). It would place a virtual stumbling block before the blind. *See Moreno v. State,* 866 S.W.2d 660, 664, n. 1 (Tex.App.—Houston [1st Dist.] 1993, no pet.) (en banc) (Cohen, J., dissenting) (government agencies should not cause litigants to forfeit their claims by encouraging the use of defective forms). It would frustrate worksharing agreements intended to allow filing with either agency. There would be no benefit from such a holding in carrying out the TCHRA or the ADA. Finally, courts have held that the ADA should be liberally construed to achieve its remedial purpose. *See Zipes v. Trans World Airlines,* 455 U.S. 385, 392–99, 102 S.Ct. 1127, 1132, 1135, 71 L.Ed.2d 234 (1982); *Perkins v. Silverstein,*

939 F.2d 463, 469–70 (7th Cir.1991); *Philbin v. General Elec. Capital Auto Lease,* 929 F.2d 321, 323 (7th Cir.1991); *Price,* 687 F.2d at 78 n. 3. These principles and cases guide our decision.

There being no statutory command in the Labor Code requiring a notary's jurat, we decline to penalize Norwood for its absence. Instead, we hold that, in this limited context and under the interplay of these particular state and federal statutes, an oath that subjects one to perjury prosecution under federal law also constitutes the oath (or affirmation) required under the Texas Labor Code. Consequently, jurisdiction existed in the trial court,[2] and summary judgment could not have been properly granted on this ground.

## THE AFTER–ACQUIRED EVIDENCE DOCTRINE

■ Litwin contended that the after-acquired evidence doctrine barred Norwood's discrimination claim because Norwood lied on his employment application and resume by stating he had an associate of science degree. Litwin contends that had it known he lied, it would not have hired him and would have fired him.

The after-acquired evidence doctrine is not a complete bar to recovery. *Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 310 (Tex. 1997); *Johnson v. Bethesda Lutheran Homes & Serv.,* 935 S.W.2d 235, 238 (Tex.App.— Houston [1st Dist.] 1996, writ denied). Although *Trico Techs..* and *Johnson* both involved anti-retaliation claims, we will apply the same rule to this disability discrimination claim. The after-acquired evidence doctrine would only bar Norwood's reinstatement and his damages incurred after September 25, 1995, the date Litwin discovered the lie. "Absent extraordinary circumstances, the employee is only entitled to back pay from the date of the unlawful discharge to the date that the employer discovered evidence of the employee's misconduct." *Trico Techs.,* 949 S.W.2d at 312. Norwood's claim is not

**2.** We find Litwin's reliance on *Brammer v. Martinaire, Inc.* 838 S.W.2d 844 (Tex.App.—Amarillo 1992, no writ) unpersuasive. That case did not deal with the issue before us, whether an oath sufficient under federal law is insufficient under state law for lack of a jurat. The *Brammer* opinion discussed a different issue, whether an unverified complaint could later be verified, and if so, which date started the statutory deadlines running.

barred in its entirety. Consequently, a take-nothing judgment could not have been properly granted on this ground.

## NORWOOD'S DISABILITY

█ As its final basis for summary judgment, Litwin asserts that (1) Norwood was not "disabled" within the meaning of the TCHRA, or alternatively, (2) even if he was "disabled," (a) he was not discharged because of his disability because the individuals who discharged him were unaware of his diabetes, and (b) a legitimate, non-discriminatory reason existed for his discharge.

█ We follow the usual standard of review. We indulge every reasonable inference in favor of Norwood and resolve any doubts in his favor. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Evidence favorable to Litwin will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

The TCHRA defines "disability" to mean, "with respect to an individual, a mental or physical impairment that *substantially limits* at least one *major life activity* of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB.CODE ANN. § 21.002(6) (Vernon 1996) (emphasis added) The ADA's definition is the same. 42 U.S.C.A. § 12102(2) (West 1995).

Litwin asserts that, although Norwood may suffer some impairment, he is not "disabled" because there is no evidence his diabetes "substantially limited" any major life activity. Neither the TCHRA nor the ADA define the term "major life activity." However, EEOC regulations define "major life activity" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1995). As an example, the regulations provide, "A diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid

---

of medication." 29 C.F.R. § 1630.2(j), App. (1995).

"The determination of whether an individual is disabled is necessarily fact intensive." *Primeaux v. Conoco, Inc.*, 961 S.W.2d 401, 404 (Tex.App.—Houston [1st Dist.] Aug.21, 1997, no writ). In determining if one is substantially limited in a major life activity, we consider:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (1995).

Norwood presented evidence that his diabetes caused him to lose consciousness, appear inebriated, become incoherent, and act belligerently. Moreover, his vision is impaired, he has circulatory problems, and he lacks feeling in his extremities. We hold that this evidence raises an issue of material fact as to whether his diabetes substantially limits a major life activity. Thus, Litwin did not prove, as a matter of law, that Norwood was not "disabled" within the meaning of the TCHRA, and summary judgment on that ground was not proper.

█ We next consider Litwin's argument that neither Ted Livin or Bill Young, who terminated Norwood, knew about Norwood's diabetes.

Regarding discrimination based on a disability, the Labor Code provides: "A provision in this subchapter ... referring to discrimination because of disability or on the basis of disability applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX. LAB.CODE ANN. § 21.105 (Vernon 1996). In requiring an employer's knowledge of an employee's disability under the ADA,[3] the Seventh Circuit has stated:

---

**3.** The language of the ADA is substantially similar to the TCHRA: no employer "shall discrimi-

nate against a qualified individual with a disability because of the disability of such individual in

We think that an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability....

At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "because of" a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "because of" some other reason.

*Hedberg v. Indiana Bell Tele. Co., Inc.*, 47 F.3d 928, 931 (7th Cir.1995).

Norwood never told Livin or Young about his diabetes, but before his discharge, Norwood was hospitalized for about four weeks and told his supervisor that he had diabetes and ulcers and that he might need a kidney transplant. Moreover, Norwood submitted three different medical information forms to Litwin's human resources department, and each disclosed his diabetes. The medical response team's report of the July 27, 1993 fainting incident mentioned his diabetes. Livin heard about the July 27, 1993 fainting spell a few days later, and he knew Norwood had experienced "a reaction or a lack of insulin or something." Norwood argues that because Livin knew about that insulin reaction and because an insulin reaction is necessarily and exclusively connected to diabetes, Livin knew of his diabetes.

Under general principles of agency law, notice to an agent is deemed notice to the principal if the agent's acts were within his authority. *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 738 (Tex.App.—Houston [1st Dist.] 1992, writ denied). We see no reason that the inverse should not be true under the facts of this case. Knowledge of Norwood's diabetes, which was repeatedly communicated to Litwin, can be imputed to Livin and Young. Moreover, Livin's actual knowledge of Norwood's insulin reaction supports an inference that Livin knew about Norwood's diabetes. Therefore, we hold that Litwin was not entitled to summary judgment on the ground that it did not know about Norwood's diabetes.

Finally, Litwin asserts that it had a legitimate, non-discriminatory reason for terminating Norwood's employment, and Norwood cannot establish that its reason was a pretext for unlawful discrimination. Litwin contends Norwood was laid off pursuant to massive layoffs caused by a loss of business. Litwin asserts Norwood was one of hundreds of employees laid off in 1993 and 1994. Because this constitutes a legitimate, non-discriminatory reason for discharging Norwood, the burden shifts to Norwood to establish that a fact issue exists as to whether Litwin's reason was a pretext. *Primeaux*, at 407–408.

Although many Litwin employees were laid off in 1993 and 1994, the correct inquiry is how similarly situated employees were treated. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir.1992). The evidence conflicts regarding whether senior electrical designers, other than Norwood, were terminated in 1993. Litwin's evidence showed that two were discharged; Norwood's that, other than he, none were discharged. Norwood presented evidence that of the 30 senior electrical designers employed on August 10, 1993, he was the twenty-third most senior, and none of the more junior designers were laid off in 1993. The conflicting evidence regarding similarly situated employees, coupled with the fact that Litwin terminated Norwood approximately two weeks after the insulin incident at work, raises a fact issue sufficient to defeat summary judgment.

We sustain Norwood's sole point of error.

We reverse the judgment and remand the cause.

regard to ... discharge of employees...." 42     U.S.C.A. § 12112(a) (West 1995).