**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-31228

ANTHONY FREDERICK, individually
and on behalf of Adrien Rene Frederick,

Plaintiff-Appellant,

versus

GREAT LAKES CHEMICAL CORPORATION
FUNDED BENEFIT PLAN,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

(95-31228)

October 31, 1996

Before POLITZ, Chief Judge, EMILIO M. GARZA  and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Anthony Frederick individually and on behalf of Adrien Rene Frederick appeals to this court

the district court's granting of summary judgment in favor of defendant/appellee regarding his

employment discrimination claim under Title I of the Americans with Disabilities Act, 42 U.S.C. §§

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

12101-12213 ("ADA"). The judgment of the district court is AFFIRMED for the reasons stated below.

## FACTS

Anthony Frederick is a Louisiana resident and an employee of OSCA, Inc., a subsidiary of Great Lakes Chemical Corporation. The parent company administers Great Lakes Chemical Corporation Funded Welfare Benefit Plan (the "Plan"), an employee benefit plan organized under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Frederick is a participant in the Plan; and his daughter, Adrien Rene Frederick, is a covered beneficiary. CoreSource is the plan supervisor, providing technical service and advice to the Plan's administrator.

On January 7, 1994, Frederick filed his first complaint under ERISA against the Plan. The suit claimed that the Plan denied welfare benefits to his daughter in violation of 29 U.S.C. § 1140. His then eight-year-old daughter has been profoundly brain-damaged since birth and required continuous skilled home nursing care which the Plan had provided in 1992 and 1993. In April 1993, Adrien had surgery to insert a G-tube for feeding. After a medical review, CoreSource concluded that Adrien no longer needed continual private care and that her medical needs could be met with periodic home care services. Effective January 1, 1994, the Plan was amended to place a $15,000 per year ceiling on reimbursements for home health care. Frederick sought declaratory relief, the costs of prior and future care for Adrien, and attorneys' fees.

The Plan moved for summary judgment on the ERISA claim. In opposition to the motion, Frederick raised for the first time a claim of discrimination under the ADA. On February 1, 1995, the district court granted Frederick's motion for leave to file an amended complaint. The Plan

2

retorted that the cap has been evenhandedly applied to all participants and that it was not motivated by a desire to discriminate against Frederick or anyone else. They also argued that Frederick's ADA claim should be dismissed because he did not file a discrimination charge with the Equal Employment Opportunity Commission.

On February 24, 1995, after the ADA claim was added, the Plan re-urged its summary judgment motion on the ERISA claim and moved for dismissal or summary judgment on the ADA claim. In connection with the ADA motion, the Plan submitted a statement of uncontested, material facts. Frederick did not file a response to the ADA motion to dismiss. On November 2, 1995, the district court granted the Plan's summary judgment motion on the ERISA and ADA claims. Frederick filed a timely notice of appeal, but it is limited to the ADA claim.

## DISCUSSION

"Summary judgment is reviewed de novo, under the same standards the district court applies to determine whether summary judgment is appropriate." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 321 (1986). A nonmovant "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

3

In *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc), this court stated, "[w]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* at 1075 (emphasis in original). Moreover, this court will affirm a summary judgment whenever a nonmoving party "has failed to respond to the defendant's evidence and indicate a material issue that is unresolved." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

In this case, Frederick did not challenge the Plan's motion for leave to file its second summary judgment motion and has offered no argument on appeal regarding his failure to respond to that summary judgment motion. Instead, in arguing that the Plan violated his and Adrien's rights under the ADA, he relies on a set of uncontested facts that has been submitted with the Plan's motion for summary judgment.

The set of facts upon which Frederick has relied and continues to rely may be summarized as follows: In 1992, the Plan reimbursed Frederick for $151,032 in home health care costs; all other beneficiaries received only $218,948.41. In 1993, Frederick received $142,455, while all other beneficiaries received only $195,416.05. Frederick was thus receiving more than 40% of all Plan reimbursements for home health care for the years 1993 and 1994. As of January 1, 1994, the Plan was amended to place a $15,000 per year cap on reimbursements for home care. The January 1, 1994, amendments to the Plan apply to all Plan participants. The January 1, 1994 amendments were adopted with no intent to discriminate.

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement,

4

or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

Under the ADA, a plaintiff may establish a claim of discrimination by presenting either direct evidence of discrimination or by using the indirect method of proof set for Ti tle VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Daigle*, 70 F.3d at 396. Frederick has not offered any evidence of direct discrimination. Instead, he argues that the Plan failed in its burden of showing that the January 1, 1994, amendment is a disability-based distinction. In essence, Frederick advances his claim on a theory of "disparate impact."[1] Fatal to Frederick's claim, however, is the fact he has neither explicitly disputed the Plan's assertion that, on its face, the cap applies to all participants, nor submitted any evidence in opposition to the Plan's summary judgment motion.[2] In effect, he is only relying on the undisputed facts proffered by the Plan.

## CONCLUSION

Frederick's failure to submit any evidence of discrimination, and his failure to challenge the Plan's statement of uncontested facts, compels summary judgment in favor of the defendant as a matter of law since no factual controversy exists. The judgment of the district court is AFFIRMED.

---

[1] Under the disparate impact model, discrimination occurs when employment practices are "facially neutral in their treatment of different groups but . . . in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Bhd. Of Teamsters v. United States*, 431 U.S. 324, n.15 (1977).

[2] Since we resolve this case based upon the lack of a factual controversy, we do not reach the merits of Frederick's ADA claim concerning the limitation of his benefits as a disability based distinction. Accordingly, discussion of the Supreme Court's decision in *Alexander v. Choate*, 469 U.S. 287 (1985), is unnecessary.

5