2015 VT 69











Stratton Corp. and Intrawest
Stratton Development Corp. v. Engelberth Construction, Inc., v. Evergreen
Roofing, LLC. (2013-336)

 

2015 VT 69

 

[Filed 01-May-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 69
 
 


 


 
 
 No. 2013-336
 
 


 


 
 
 The Stratton Corporation and
 Intrawest Stratton Development Corporation
 
 
 Supreme Court
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windham Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
 Engelberth Construction, Inc.
  
      v.
  
 Evergreen Roofing, LLC
 
 
  
 September Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Karen
 R. Carroll, J.
 
 
 
 
  
 
 


Shapleigh Smith, Jr., William Andrew MacIlwaine and Sophie
E. Zdatny of Dinse, Knapp &

  McAndrew, P.C., Burlington, for Third-Party
Plaintiff-Appellee.

 

Richard W. Affolter, Michael J. Gannon and Sara Moran of
Affolter Gannon & Rose, Ltd.,

  Essex Junction, for Third-Party Defendant-Appellant.

 

 

PRESENT:    Reiber, C.J., Dooley and Skoglund,
JJ., and Maley and Griffin, Supr. JJ.,

                    
Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   This case stems from a condominium
construction project in Stratton, Vermont.  Owner and developer, Stratton
Corporation and Intrawest Stratton Development Corporation (collectively
“developer”), sued the project’s general contractor Engelberth Construction,
Inc., who in turn filed a third-party claim against subcontractor Evergreen
Roofing Company.  A jury found that Engelberth Construction breached its
contract with developer and breached an express warranty, which proximately
caused developer to sustain damages related to roof repairs.  The jury
also found that Evergreen Roofing breached its subcontract with Engelberth
Construction, and that Evergreen Roofing was obligated to indemnify Engelberth
Construction.  Evergreen Roofing appeals.  It argues that the court
erred in denying a pretrial motion for summary judgment filed by Engelberth
Construction on various issues, including the scope of the contract between
developer and Engelberth Construction and whether proof of non-insurance or
lack of availability of insurance coverage was a prerequisite to developer’s
recovery against Engelberth.  We conclude that Evergreen Roofing failed to
preserve its argument, and we therefore affirm.

¶ 2.            
The record indicates the following.  In April 2000, developer and
Engelberth Construction entered into a standard agreement outlining the scope
and terms of a condominium construction project.  The agreement gave
developer the option of implementing a Consolidated Insurance Program (CIP),
which developer did.  Article 11A of the agreement, entitled “Insurance,
Bonds and Indemnification,” outlined developer’s responsibilities, as well as
those of Engelberth Construction and any subcontractors, given the
implementation of the CIP.  Article 11A contained the following provisions
related to the CIP; the term “owner” refers to developer:

11.1.2
CIP Coverage—Owner may implement a CIP to furnish certain insurance
coverages as respects on-site activities.  The CIP will be for the benefit
of the owner, Contractor and Subcontractors of any tier (unless specifically
excluded) who have on-site employees.  Such coverage applies only to work
performed under the Contract Documents at the Project site and the Contractor
and all Subcontractors of any tier must provide their own insurance for
off-site activities.  Contractor and all Subcontractors of any tier will
also be responsible for providing the coverages specified in Subparagraph
11.1.8.  The CIP is not intended to cover consultants, suppliers, vendors,
or materials dealers or others whose function is solely to supply and/or
deliver materials, parts, or equipment to and from the site.  The CIP is
intended to cover these individuals if they remain on site (after delivery) in
an advisory capacity regarding installation or use of the materials, parts or
equipment delivered.

 

 
In the event it implements CIP, Owner may procure and maintain [other] types of
insurance in force as part of the CIP for the Contractor and Subcontractors of
any tier (unless specifically excluded).  

 

The agreement then listed several
other types of insurance, including worker’s compensation and employer’s
liability insurance, commercial general liability insurance, and excess
liability insurance, that developer could choose to implement as part of the CIP. 


¶ 3.            
The agreement had the following separate provisions regarding builder’s
risk insurance:

11.3 
BUILDER’S RISK INSURANCE

Owner
shall procure, pay for, and maintain all-risk builder’s risk insurance as
follows:

 

11.3.1 
Required Insurance—Owner shall carry all-risk builder’s risk insurance .
. . for the full insurable value of all labor and materials incorporated into
the construction of the Work, while at the construction site or staging area
awaiting erection and during erection, until completion and acceptance. 
Insurance is to cover real and personal property after it is received at the
construction site or staging area . . . .  The policy so purchased shall
insure Owner, the Contractor and Subcontractors as their interests may appear and
shall be so written as to provide for reimbursement, in the event of claim for
loss or damage, for the entire cost . . . of repairing or replacing,
reconditioning, or reerecting the property lost or damaged with materials of
similar kind and quality, including, but not by way of limitation, the cost of
materials, labor, supervision, engineering, transportation, insurance premium
and taxes.  

 

¶ 4.            
The agreement also contained the following specific provisions related
to indemnification:

11.5 
INDEMNIFICATION

 

11.5.1 
Indemnity—To the fullest extent permitted by law, Contractor shall
indemnify, defend and hold harmless Owner, Owner’s partners, the parent
companies and affiliates of Owner and of any of Owners partners, Architect and
the directors, officers, shareholders, employees and agents of any of the above
mentioned parties (the “Indemnified Parties”) from and against any and all
loss, cost, expense, damage, injury, liability, claim, demand, penalty or cause
of action (including Attorney’s fees and disbursements), directly or indirectly
arising out of, resulting from or related to (in whole or in part), the
performance of the Work to the extent that (a) the same results from the
negligent acts or omissions of the Contractor, a Subcontractor, anyone directly
or indirectly employed by them or anyone for whose acts they may be liable, and
(b) the same are not covered by insurance the Owner is required to maintain
under Paragraph 11.3 or otherwise maintains.  The Contractor shall not be
obligated to indemnify any Indemnified Party for that portion of any loss,
cost, expense, damage, injury, liability, claim, penalty or cause of action
attributable to the negligence of the Indemnified Party or its employees.

 

¶ 5.            
Engelberth Construction and Evergreen Roofing subsequently entered into
a subcontract covering roofing work on the project.  The subcontract
provided that Evergreen Roofing “shall indemnify, defend and hold harmless”
developer and Engelberth Construction “from and against claims, damages, losses
and expenses, including attorney’s fees, interest, penalties, and fines,
arising out of or resulting from performance or nonperformance” of Evergreen
Roofing’s work, “provided that any such claim, damage, loss or expense is
alleged to be caused in whole or in part, by the acts or omissions of
[Evergreen Roofing] . . . but only to the extent caused by” Evergreen
Roofing.  

¶ 6.            
The project was substantially completed in June 2002.  In 2003, the
condominium association threatened to sue developer over numerous issues,
including certain alleged construction defects in the roofing.  The
parties to that dispute reached a settlement agreement in June 2005.  That
same month, developer filed this suit against Engelberth Construction, raising
claims of negligence, breach of contract, and breach of warranty.*  Developer alleged that Engelberth
Construction was responsible for defects in the construction of roofing and
roofing systems of many units, causing water damage, and for inferior,
incomplete, and unworkmanlike construction in many aspects of the project.
 Engelberth Construction then filed a third-party claim against Evergreen
Roofing on breach of contract and negligence grounds and specifically on the
basis of the indemnification provision of its contract with Evergreen Roofing. 

¶ 7.            
In November 2011, almost a year before trial, Engelberth Construction
moved for summary judgment.  It argued, among other things, that
developer’s claims were not ripe for decision because Article 11A of the
parties’ agreement expressly required that, before Engelberth Construction
could be required to indemnify developer, such claims must be shown not to be
covered by insurance maintained by developer.   At a hearing,
Evergreen Roofing orally indicated its support for the motion.  

¶ 8.            
The court denied the motion. It recounted many of the facts above: it
noted that the CIP that developer purchased was intended to cover losses on the
project arising from the activities of enrolled participants, and that
Engelberth was enrolled in developer’s CIP.  The court found that the
question of whether this policy was intended to provide builder’s risk
insurance was a contested issue and noted there was a declaratory-judgment
action related to the CIP coverage currently pending in federal district
court.  

¶ 9.            
Evergreen Roofing suggests that this issue was revisited at trial. 
It states that, on the day before trial, Engelberth Construction sought to
amend its answer to state additional defenses based on developer’s alleged bad
faith during settlement negotiations.  The court considered this request
in conjunction with developer’s motion to exclude evidence concerning CIP
insurance.  The court denied the motion to amend on the record, finding
that it would be very prejudicial to allow Engelberth Construction to bring in
new defenses at such a late date.  Evergreen Roofing did not file anything
with the court to indicate its support of Engelberth Construction’s motion to
amend.  The court explained that additional discovery and depositions of
new witnesses would be necessary; the new defenses would require the jury to
hear about settlement negotiations between the parties; and the argument advanced
by Engelberth Construction seemed weak.  

¶ 10.        
As to developer’s request to exclude evidence related to the CIP issue,
the court stated that it could not see how such evidence could come in. 
Developer maintained that the indemnity provision in the contract related to
its negligence claim.  Developer explained that it no longer intended to
pursue its negligence claim against Engelberth Construction, relying instead on
its breach-of-contract and breach-of-warranty claims.  In light of this,
counsel for Engelberth Construction stated that it did not oppose the motion to
exclude evidence concerning CIP insurance. 

¶ 11.        
Evergreen Roofing also asserts that Engelberth Construction submitted requests
to instruct the jury based on breaches of the indemnity clause in its agreement
with developer. Engelberth Construction responds that while it did propose jury
instructions on good faith and promissory estoppel, these instructions were not
adopted by the court, and no party objected.  

¶ 12.        
Following trial, the jury found Engelberth Construction liable to
developer for breach of contract and breach of express warranty, and found that
Evergreen Roofing must indemnify Engelberth Construction.  As stated by
Evergreen Roofing, the legal effect of Article 11A in the underlying contract
“was left undetermined in submitting the case to the jury.  The jury was
simply charged to enforce the contract with no reference to the meaning of the
‘disputed’ indemnity language.”  Evergreen Roofing appeals from the
judgment.  

¶ 13.        
In its brief, Evergreen Roofing argues that Article 11A should have
barred developer from presenting its claims to the jury.  It maintains
that it has raised this argument “throughout this case.”  It points to
Engelberth’s motion for summary judgment; Engelberth’s motion to amend and the
court’s discussion of this issue; and Engelberth’s proposed jury
instructions.  According to Evergreen Roofing, the trial court’s failure to
either interpret Article 11A as a matter of law or to interpret the CIP
policies submitted with the motion for summary judgment “left a void in the
evidence.”  It asks this Court, among other things, to reverse the
pretrial summary-judgment decision and stay the execution and interest on the
underlying judgment until such time as there is a determination as to CIP
coverage.  

¶ 14.        
We agree with Engelberth Construction that the issues raised by
Evergreen Roofing are not properly before us.  First, a party generally
cannot appeal from the pretrial denial of a motion for summary judgment. 
This is because “[o]nce trial begins, summary judgment motions effectively
become moot,” Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396-97 (5th
Cir. 1995), and the trial court’s “judgment on the verdict after a full trial
on the merits . . .  supersedes the earlier summary
judgment proceedings.”  Jacques v. DiMarzio, Inc., 386 F.3d 192,
199 (2d Cir. 2004) (quotation omitted).  Evergreen Roofing provides
no legal authority to support any exception to this general rule.   

¶ 15.        
Evergreen Roofing similarly did not raise this issue at trial.  As
detailed above, it did not join in Engelberth Construction’s motion to amend
its answer; it did not object to the exclusion of CIP evidence; it did not
object to the jury instructions; and it did not move for judgment as a matter
of law.  Evergreen Roofing’s failure to properly raise the CIP issue at
trial precludes our review of this issue on appeal.  See Follo v. Florindo,
2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230 (“[I]ssues not
raised at trial are unpreserved, and this Court will not review them on
appeal.”).    

Affirmed.

 

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














* 
Developer did not pursue its negligence claim at trial.